IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JONI HIXSON,

        Plaintiff,

   v.

WELLS FARGO BANK NA,

        Defendant.

        /

No. C 14-285 SI

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

On June 13, 2014, the Court heard oral argument on the defendant's motion to dismiss. Having considered the arguments of counsel and the papers submitted, the Court DENIES defendant's motion to dismiss.

**BACKGROUND**

In March 2000, plaintiff purchased the property located at 5 Big Sur Way, Pacifica, California 94404 (the "Property"). First Amended Compl. ("FAC") ¶ 10. On January 26, 2006, plaintiff refinanced her mortgage loan with World Savings Bank, F.S.B. ("World Savings"), executing a Promissory Note and Deed of Trust in favor of World Savings. *Id.* Defendant Wells Fargo ultimately acquired the loan and remains the beneficiary of plaintiff's Promissory Note and Deed of Trust. *Id.* ¶ 11.

In October 2009, plaintiff contacted Wells Fargo in order to find out why her mortgage payments had increased. *Id.* ¶ 12. According to plaintiff, the Wells Fargo representative with whom she spoke "did not clarify why her payments had increased but indicated that plaintiff may be eligible for a loan modification." *Id.* However, the representative informed plaintiff that she was ineligible for a loan modification at that time because she was current on her payments and would have to miss five mortgage payments to become eligible. *Id.* Plaintiff stopped making payments and applied for a loan modification. *Id.* Between November 2009 and December 2013, plaintiff applied for several loan modifications and continued reapplying after Wells Fargo either rejected her applications or denied them as incomplete. *Id.* ¶ 13. On December 21, 2011, Wells Fargo recorded a Notice of Default against plaintiff's property. *Id.*

In May 2013, plaintiff began renting out a room in her house in order to obtain additional income and submitted a new loan modification application to reflect her changed financial situation. *Id.* ¶ 18. Wells Fargo acknowledged receipt of the complete loan modification application in June 2013. *Id.* On July 18, 2013, Wells Fargo recorded a Notice of Trustee's Sale against the Property. *Id.* ¶ 19.

During the loan modification process between December 2012 and April 24, 2013, Wells Fargo assigned and then transferred plaintiff to eight different single points of contact. *Id.* ¶¶ 15-17, 20-26. Plaintiff alleges that none of the eight individuals were able to perform the requisite responsibilities of a single point of contact. *Id.* ¶ 39. The FAC alleges, "In fact, the individuals that Plaintiff spoke to did not have 'access to current information . . . sufficient to timely, accurately, and adequately inform [Plaintiff] of any missing documents necessary to complete the application.' In fact, Plaintiff was unable to receive any information from many of the individuals, because they refused to answer Plaintiff's telephone calls at all. Further, the individuals were not 'knowledgeable about [Plaintiff's] situation and current status in the alternatives to foreclosure process,' and, in fact, many of the individuals that Plaintiff spoke to that were deemed her 'single point of contact' did not even know who Plaintiff's single point of contact was, or that they had been assigned or removed as Plaintiff's single point of contact." *Id.*

2

On December 23, 2013, plaintiff filed a complaint in San Mateo County Superior Court against defendant Wells Fargo, alleging causes of action for: (1) violation of California Civil Code § 2923.5; (2) violation of California Civil Code § 2923.6; and (3) violation of California Civil Code § 2923.7. Docket No. 5, Amended Notice of Removal Ex. A. On February 28, 2014, Wells Fargo removed the action from state court to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. *Id.* On March 24, 2014, plaintiff filed the FAC alleging causes of action for (1) violation of California Civil Code § 2923.6 by recording a Notice of Trustee's Sale on July 18, 2013, while her loan modification application was pending and (2) violation of California Civil Code § 2923.7 by assigning plaintiff to numerous individuals as her "single point of contact," none of whom adequately performed the responsibilities of a single point of contact. FAC ¶¶ 30-40.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, "the tenet that a court must accept as true all of

3

the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. In considering a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings. *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

**I.    HOLA preemption**

Defendant contends that plaintiff's claims are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*, and the regulations promulgated pursuant to that statute by the Office of Thrift Supervision ("OTS").[1] Federal savings associations, including federal savings banks, are subject to HOLA and regulated by the OTS. *See* 12 U.S.C. § 1464; *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008). In contrast, federally chartered banks are regulated by the Office of the Comptroller of the Currency ("OCC") under the National Banking Act. *See Bank of America v. City and County of San Francisco*, 309 F.3d 551, 561-62 (9th Cir. 2002). HOLA was a "'radical and comprehensive response to the inadequacies of the existing state system,' and [is] 'so pervasive as to leave no room for state regulatory control.'" *Silvas*, 514 F.3d at 1004-05 (citing *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979)); *see also Aguayo v. U.S. Bank*, 653 F.3d 912, 921-22 (9th Cir. 2011) (discussing broad scope of "full field preemption" under HOLA as compared to narrower conflict preemption under the National Banking Act).

In 1996, the OTS issued 12 C.F.R. § 560.2, which provides that certain types of state laws are preempted by HOLA. Section 560.2(b) provides a non-exhaustive list of such laws, including state laws

---

[1] Defendant Wells Fargo initially moved to dismiss on additional grounds of lack of tender, judicial estoppel, compliance with the National Mortgage Settlement, and failure to state a claim. Wells Fargo subsequently withdrew its arguments concerning lack of tender, judicial estoppel, and compliance with the National Mortgage Settlement. Docket No. 25 at 8.

4

1 that purport to impose requirements regarding "[t]he terms of credit, including . . . adjustments to the
2 interest rate, balance, [and] payments due . . . ," 12 C.F.R. § 5602.(b)(4), and the "processing,
3 origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]" 12 C.F.R.
4 § 560.2(b)(10). If a state law is of the type listed in paragraph (b) of § 560.2, "the analysis will end
5 there; the law is preempted." *Silvas*, 514 F.3d at 1005. If a state law is not expressly preempted, the
6 court must determine "whether the law affects lending." *Id.* Defendant contends that plaintiff's claims
7 are preempted by 12 C.F.R. § 560.2(b)(4) and (10) because her claims "clearly challenge the bank's
8 procedures concerning the loan modification review process, and Wells Fargo's right to conduct a non-
9 judicial foreclosure after attempts to collect mortgage payments." Docket No. 19 at 12:23-25.

10 Plaintiff contends that HOLA does not apply to her claims because her claims arise from actions
11 taken by Wells Fargo, a national bank. Defendant argues that although Wells Fargo is not a federally
12 chartered savings association, HOLA nevertheless applies because plaintiff's loan originated with World
13 Savings, a federal savings bank ("FSB"). Defendant relies on cases from this District, including from
14 this Court, holding that HOLA preemption attaches to and survives the transfer of a FSB-originated
15 loan. *See, e.g., DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010);
16 *Castillo v. Wachovia Mortg.*, No. C-12-0101 EMC, 2012 WL 1213296, at *11-12 (N.D. Cal. Apr. 11,
17 2012); *Parmer v. Wachovia*, No. C 11-0672 PJH, 2011 WL 1807218, at *1-2 (N.D. Cal. April 22,
18 2011).[2]

19 However, as plaintiff notes, most of the cases cited by defendant reached that conclusion with
20 little analysis. Plaintiff argues that a growing number of courts, including many within this District,
21 have held that whether HOLA preemption applies depends on whether the claims arise from actions
22 taken by the federal savings association or from actions taken by the national bank.[3] *See Leghorn v.*
23 *Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1107-08 (N.D. Cal. 2013) (discussing split in authority
24 and concluding that "timing of the challenged conduct" determines whether HOLA preemption applies
25 to claims brought against a national bank where the loan originated from a bank regulated under

---

[2] Defendant's motion does not contend that plaintiff's claims are preempted under the National Banking Act.

[3] The Ninth Circuit has not yet addressed this question.

5

HOLA); *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, No. C 13-05881 LB, 2014 WL 890016, at *7 (N.D. Cal. Mar. 3, 2014) ("Here, all of the wrongful conduct alleged by Plaintiffs was done by Wells Fargo and occurred from 2011 to 2013, well after Wachovia merged into Wells Fargo. This means that Wells Fargo, which is not a federal savings association or bank, may not assert HOLA preemption in this particular action"); *Cerezo v. Wells Fargo Bank*, No. 13-1540 PSG, 2013 WL 4029274, at *2-4 (N.D. Cal. Aug. 6, 2013); *Hopkins v. Wells Fargo Bank*, No. CIV. 2:13–00444 WBS JFM, 2013 WL 2253837, at *2-3 (E.D. Cal. May 22, 2013); *Rhue v. Wells Fargo Bank, N.A.*, No. CV 12–05394 DMG (VBKx), 2012 WL 8303189, at *2-3 (C.D. Cal. Nov, 27, 2012); *Rodriguez v. U.S. Bank Nat'l Ass'n*, No. C 12–00989 WHA, 2012 WL 1996929, at *7 (N.D. Cal. June 4, 2012) ("This court has taken the position that whether HOLA governs the action depends on when the alleged conduct occurred."); *Albizo v. Wachovia Mortg.*, No. 2:11-cv-02991 KJN, 2012 WL 1413996, at *16 (E.D. Cal. Apr. 20, 2012); *Gerber v. Wells Fargo Bank, N.A.*, No. 03-11-00529-CV, 2012 WL 413998, at *4 (D. Ariz. Feb. 9, 2012) ("preemption is not some sort of asset that can be bargained, sold, or transferred . . . ."); *Ramirez v. Wells Fargo Bank, N.A.*, No. C 10-05874 WHA, 2011 WL 1585075, at *7 (N.D. Cal. Apr. 27, 2011) (declining to extend HOLA preemption to claims arising out of Wells Fargo's post-merger conduct); *Valtierra v. Wells Fargo Bank, N.A.*, No. CIV-F-10-0849 AWI GSA, 2011 WL 590596, at *4 (E.D. Cal. Feb. 10, 2011) ("Other cases have looked to see whether the alleged violations took place when the banking entity was covered by HOLA. . . . This rule appears to be the best supported.").

The Court in *Rhue* explained:

> The important consideration is the nature of the alleged claims that are the subject of the suit. The governing laws would be those applicable to [World Savings Bank] at the time the alleged misconduct occurred. Wells Fargo, being the successor corporation to Wachovia Mortgage and thus [World Savings Bank], succeeds to those liabilities, whatever the governing law at that time may be. Therefore, [World Savings Bank's] conduct before its merger with Wells Fargo on November 1, 2009 would be governed by HOLA where appropriate, while Wells Fargo's own conduct after that date would not.

2012 WL 8303189, at *3.

Defendant also argues that OTS has interpreted Section 560.2 to mean that if an originating FSB is not subject to a state law claim because of HOLA preemption, then an assignee or purchaser of the loan may also raise HOLA preemption as a defense. In Opinion Letter No. P-2003-5 (July 22, 2003) ("2003 OTS Opinion"), the OTS analyzed whether HOLA preempted a New Jersey consumer lending

6

1 statute. The OTS was asked "whether purchasers or assignees of loans originated by federal savings
2 associations would be subject to claims and defenses that would not apply to the federal savings
3 association that originated the loans." Def's RJN, Ex. N at 6. The OTS answered that purchasers and
4 assignees would be "subject only to the same claims and defenses that would apply to the federal
5 savings association that originated the loan." (*Id*. at p. 7, n. 18). Defendant also cites footnote 18 of the
6 opinion letter, which states "This result would be consistent with the general principle that loan terms
7 should not change simply because an originator entitled to federal preemption may sell or assign a loan
8 to an investor that is not entitled to federal preemption[.]" 2003 OTS Opinion at p. 7, n.18. Defendant
9 notes that the 2003 OTS Opinion Letter itself relied on a 1985 opinion issued by the Federal Home Loan
10 Bank Board (the predecessor to the OTS), which concluded:

> It is our opinion that such preemption would exist regardless of whether the loans in question are sold by the federal association to a third party, are being serviced by a third party, or whether the escrow deposits are held at a federal association while the loans have been sold in the secondary market.

(RJN, Exh. R; Opinion Gen. Counsel, FHLBB (Aug. 13, 1985), available at 1985 FHLBB LEXIS 178 at *5). However, the Court agrees with plaintiff that these OTS letters stand for the proposition that an assignee of a FSB originated loan may raise HOLA preemption as a defense to origination claims.

Defendant also contends that plaintiff agreed to have the loan covered by HOLA based upon provisions in the Deed of Trust and Promissory Note which state that the security instrument "shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions." Def's Request for Judicial Notice, Ex. G at 9; Ex. F. At 5. However, those provisions simply provide that the security instrument will be governed by applicable federal law, and do not specify HOLA.

Accordingly, the Court concludes that HOLA preemption does not apply in this case.

**II.    California Civil Code § 2923.6 Claim**

Defendant also contends that plaintiff has failed to state a claim for a violation of California Civil Code § 2923.6. California Civil Code § 2923.6 provides that

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice

7

of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending . . . until . . . the mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period . . . has expired.

Cal. Civ. Code § 2923.6. The FAC alleges that plaintiff submitted a complete first lien loan modification application in May 2013, defendant acknowledged receipt of this application in June 2013, and defendant proceeded with recording a Notice of Trustee's Sale on July 18, 2013, without first making a written determination on the loan modification application. FAC ¶ 34.

Defendant contends that plaintiff's § 2923.6 claim is insufficiently pled because the FAC does not state how much plaintiff was receiving as rental income when she submitted a new loan modification application in May 2013, nor does it describe how defendant responded to the new loan modification application, other than alleging that "Defendant acknowledged receipt of [the] completed loan modification application in June 2013." FAC ¶ 34. Defendant also contends that the FAC fails to allege any facts to show that the HBOR violation was material.

Plaintiff argues that the allegations are sufficient and that the amount of rental income as well as the issue of materiality are questions of fact inappropriate for disposition on a motion to dismiss. The Court agrees, and concludes that the allegations provide sufficient notice to defendant about the alleged violation of § 2923.6.

## III.   California Civil Code § 2923.7 Claim

California Civil Code § 2923.7 requires lenders to establish a single point of contact who shall be responsible for communicating and informing the borrower of the status of available foreclosure prevention alternatives.[4] California Civil Code § 2923.7 provides that when a lender receives an application for a foreclosure prevention alternative, the lender is required to "promptly establish a single point of contact" who is responsible for the following:

> (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options;

---

[4] Defendant argues that the language of § 2923.7 requires borrowers to affirmatively request a single point of contact and that the FAC does not allege that plaintiff ever requested one. However, defendant does not dispute that plaintiff was provided with multiple single points of contact, and thus defendant's argument is moot and the Court need not address it here.

8

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application;

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative;

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any; and

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Cal. Civ. Code § 2923.7(b). Defendant contends that plaintiff's § 2923.7 claim is insufficiently pled because the FAC simply alleges that plaintiff's single points of contact were "inadequate" and "not helpful" and that the FAC fails to allege any facts showing a material violation of HBOR.

The FAC alleges that none of plaintiff's multiple single points of contact were able to perform the responsibilities of a single point of contact and were not knowledgeable about plaintiff's situation and current status. FAC ¶ 39. "In fact, plaintiff was unable to receive any information from many of the individuals, because they refused to answer plaintiff's telephone calls at all." *Id*. Further, the FAC alleges that "plaintiff was never considered for all foreclosure prevention alternatives, as required by subsection (b)(4)." *Id*. The Court concludes that plaintiff had adequately alleged that her single points of contact did not have "access to current information . . . sufficient to timely, accurately, and adequately inform [her] of any missing documents necessary to complete the application" in violation of § 2923.7.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: August 6, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

9